## JAMES RANGELEY *versus* JOHN SPRING.

Where a party has so conducted himself, as wittingly and willingly to lead another into the belief of a fact, whereby he would be injured if the fact were not as so apprehended, the person inducing the belief will be estopped from denying it to the injury of such other person.

If one procures a conveyance of land to be made, and is the go-between of the parties in accomplishing it, he will not be allowed to question the rights of third persons from thence innocently deriving title.

Although the estate is held in her right, a woman under coverture cannot be bound by her verbal assent or actual knowledge of a conveyance of her lands by her husband; and therefore her knowledge of or assent to such conveyance, is not necessary in order to render the deed operative against the husband.

THIS was a writ of entry demanding certain lands in Saco. The land was the property of Olive Spring, the wife of John Spring. On Jan. 4, 1830, Spring and wife mortgaged the property to the Saco Bank, and before the charter of the corporation expired by its own limitation, the bank assigned the mortgage to Jonathan King, Samuel Hartly and George Thacher for the benefit of the stockholders. On or about May 10, 1833, the precise day not having been shown, the trustees entered into the premises to foreclose the mortgage. At the time the mortgage was made, the bank gave back a paper

wherein they engaged, that when the money was paid, they would re-convey the estate to Mrs. Spring or to her heirs. On the ninth or tenth of May, 1836, the last day before the right of redeeming the land would cease to exist, Spring offered to the trustees a check drawn by David Webster on a bank in Portland, and payable to the bearer, for the sum of five thousand dollars, and offered to pay the balance, about $200, in cash. The trustees declined to take the check of Webster as money, and it was finally agreed, that the trustees should take the check and an assignment of a policy of insurance before that time obtained by Spring on the house, and that if the check was paid at maturity it should be the same as if paid then. The check was delivered to the trustees, and on the next day the policy was assigned. At this time the name of Webster was not mentioned, excepting as drawer of the check. On July 12, 1836, the amount due on the mortgage, $5190,95, was paid to the trustees, the proceeds of the check being a part thereof, and was on that day credited to the stockholders by the trustees as the "balance due on mortgage of the Spring property." The trustees made a deed of quitclaim to David Webster, *dated July* 30, 1836, purporting to have been acknowledged *July* 13, 1836, and recorded Feb. 13, 1837. The material parts of this deed, and the facts in relation to the execution and delivery thereof, will be found in the opinion of the Court. The defendant objected to the introduction by the plaintiff of any part of the recital in the deed of the trustees to Webster, following the description of the premises, as inoperative upon the defendant, and illegal in its character, the defendant being no party to the deed. The objection was overruled. There was testimony in relation to a copy of a writing from Webster to Spring, made at the request of Webster, and of certain conversation between the witness and Webster. Spring was not present, and there was no evidence of the delivery of the paper to Spring. This evidence was objected to by the counsel of Spring, but was admitted. This paper was dated *July ninth,* 1836, and recited, that on the *thirteenth of the same month* the trustees had made a

conveyance of the property to him, and contained a promise by Webster to convey the property to John Spring on being paid the sum of $6017,60 in three years from date. Webster, April 18, 1838, conveyed the land to Burnham. Rangely recovered judgment against Webster and Burnham, and on June 28, 1839, levied his execution on the land mortgaged by Spring and his wife to the bank, as the property of Burnham. There was no evidence that Mrs. Spring had knowledge of any of the transactions after she signed the deed to the bank. The land was of much greater value than the amount due on the mortgage. There was other testimony in the case having no material relevancy to the points on which the decision was made.

The counsel for Spring requested EMERY J. before whom the trial took place, to give to the jury several instructions, and among them, that the reception of the check under the agreement, and the receipt of the money by the trustees and stockholders, and the taking of further additional security by accepting the assignment of the policy of insurance, were a waiver of the entry to foreclose the mortgage, and an admission that the property was then, and was to be continued, a subsisting mortgage. The Judge declined to give this instruction.

Also, that the jury must be satisfied, that Mrs. Spring was apprised of and assented to whatever arrangement or acts of her husband which related to the conveyance from the trustees to David Webster, to render the conveyance to Webster effectual to pass the title. This was given as an instruction by the Judge.

The verdict was for the tenant but was to be set aside, if the ruling or instructions were erroneous as to the rights of the demandant.

There were motions for a new trial for several distinct causes, one of which was because the verdict was against evidence.

*Howard*, for the demandant, among other grounds on which he contended that the verdict should be set aside, urged that the tenant was estopped from setting up as a defence, that

nothing passed to Webster by the deed of the trustees to him. The deed to Webster was obtained through the agency of Spring, and he had the benefit of it as a valid deed. To enable the tenant to defeat the deed, under the circumstances of this case, would operate as a gross fraud, which a court of justice can never sanction.

There can be no waiver of an entry to foreclose by parol. *Scott* v. *McFarland*, 13 Mass. R. 309.

No notice to Mrs. Spring, she being under coverture, was necessary, and the verdict, for that cause alone, should be set aside.

*Bradley*, for the tenant, contended that there could be no estoppel in this case, for no person can be precluded from showing the truth by the recitals in a deed between third persons. This principle is found in all the books on this subject.

Nor was there any estoppel on the ground of Spring's standing by and seeing Webster advance his money on property which belonged to Mrs. Spring. The check was given at least sixty-four days before the deed was made, and if the deed related to this money, it was merely as security for a precedent debt. There was no question of fraud raised at the trial. Whether there is fraud or not, is always to be submitted to the jury. *Jackson* v. *Timmerman*, 7 Wend. 437; *Parker* v. *Nichols*, 7 Pick. 116; *Jackson* v. *Peck*, 4 Wend. 304.

Besides, had the fact been found by the jury, this principle could not operate as an estoppel at law, but only in equity. *Heard* v. *Hall*, 16 Pick. 460. This principle is limited to personal property. The Sarah Ann, 2 Sumn. 206. But if this was in a Court of equity, that Court would never suffer the property of Mrs. Spring, worth twice the amount of the mortgage, without her consent to go to pay the debts of Webster. If the paper from Webster, promising to convey to Spring, is in the case, he was guilty of a fraud in conveying to Burnham before the three years expired. Rangeley saw on the record that the property was mortgaged by Mrs. Spring, and had sufficient notice to put him on his guard.

There was no conveyance of the estate by the trustees to Webster. The instrument was on its face but a discharge of the mortgage. *Wade* v. *Howard*, 11 Pick. 289 ; 6 Peters, 383.

In this case the property in controversy · belonged to Mrs. Spring, and when she executed the mortgage she took back a paper, that the reconveyance should be to her. Her rights could not be affected by any acts of her husband. If the demandant can recover, the course taken operated to transfer the real estate to Webster, without her assent or knowledge. The levy is not upon a life estate ; the action demands the fee, and throughout, the demandant has gone for the whole. The husband by redeeming a mortgage can acquire no title to lands of his wife. Here the mortgage was made for his benefit, and he was bound to redeem the land from it. The moment the money was paid, the land was restored to her. The rights of the wife cannot be affected by any entry into her land under the mortgage without her assent or knowledge. *Hadley* v. *Houghton*, 7 Pick. 29 ; *Swan* v. *Wiswall*, 15 Pick. 128 ; *Peabody* v. *Patten*, 2 Pick. 518. The last instruction of the Judge was therefore right.

But if that instruction was erroneous, still upon the facts in this case, appearing as well from their evidence as from ours, upon one principle, we are clearly entitled to retain our verdict. The reception of the check and of the policy was in itself a waiver of the entry to foreclose the mortgage. The money was actually received and credited, as money received on the Spring mortgage, on the twelfth of July. The mortgage then ceased to exist, not by a foreclosure, giving a title in the premises to the trustees, but by a redemption of the mortgage by payment of the money due. If the trustees had brought a writ of entry on the next day to recover the land mortgaged, it could not have been sustained. They had received the debt, and thereupon the estate was instantly relieved from the incumbrance of the mortgage. The trustees had no more right to the premises, than they would have had, if the mortgage had never been made. The estate belonged to Mrs. Spring, as

soon as the money was paid and received on the twelfth. Webster then had not been heard of in the business. The deed by the trustees to Webster made afterwards, whether on the *thirteenth* or the *thirtieth* of July is immaterial, passed nothing to Webster. The levy on the premises by the demandant gave him no title thereto; and he cannot maintain this action without showing a title. *Quint* v. *Little*, 4 Greenl. 495 ; *Dexter* v. *Arnold*, 1 Sumn. 118 ; *Fay* v. *Valentine*, 5 Pick. 418 ; *Batchelder* v. *Robinson*, 6 N. H. R. 12 ; *Flanders* v. *Barstow*, 6 Shepl. 357 ; *Cutts* v. *York Man'g Co.*, 2 Shepl. 326 ; *Clark* v. *Wentworth*, 6 Greenl. 259 ; *Gray* v. *Jenks*, 3 Mason, 527 ; *Leighton* v. *Shapley*, 8 N. H. R. 359 ; *Jackson* v. *Crafts*, 18 Johns. R. 110 ; *Eaton* v. *Simonds*, 14 Pick. 98.

The opinion of the Court was drawn up by

WHITMAN C. J. — This is a writ of entry, wherein the plaintiff seeks to recover of the defendant certain real estate in Saco. He sets up a levy upon the estate, which is admitted to have been made in due form, in satisfaction of a judgment by him recovered against David Webster and Daniel Burnham ; so that the plaintiff may be deemed to have a right to recover against the defendant, provided either said Webster or said Burnham had such an estate in the premises levied upon as would pass by the levy. It appears that Webster had conveyed it to Burnham, and that the levy upon it was as his property. The plaintiff, to prove the title to have been in Webster, before his conveyance to Burnham, introduced a copy of a deed from the registry, which purported to have been made to Webster before he conveyed to Burnham, by Jonathan King and others, as the trustees of the Saco Bank ; and also a copy from the registry of a deed of mortgage made by the defendant and his wife, in her right, of the premises to said Bank, which, with the premises described therein, appeared to have been assigned to said trustees, for the purpose of effecting a close of the concerns of that institution. And it appeared, that the Bank had entered for condition broken ; and that

more than three years had elapsed thereafter before the making of the deed to Webster. Proof was introduced by the plaintiff tending to show, that Webster had loaned to the defendant a sum of money, being the amount necessary to pay the debt, to secure which, the said mortgage had been given, and which he paid to said trustees, and requested them to make the conveyance aforesaid to the said Webster ; that the conveyance so made, together with the original mortgage deed and notes described therein, were delivered to the defendant, the said Webster not being present at the time ; that the deed, so made by the trustees to said Webster, was, by the defendant, delivered to the said Webster, on receiving from him an agreement in writing, but not under seal, in which it was stipulated, on the part of said Webster, that, if the defendant should pay him $6017,60, with interest, within three years from the date thereof, he would convey, by a quitclaim deed, all his right to the premises to the defendant and his wife.

In the deed, made by the said trustees to Webster, is the following description and recital, viz. : — " In consideration of five thousand one hundred and ninety dollars and ninety-five cents, paid by David Webster, &c. the receipt whereof we do hereby acknowledge, do hereby remise, release, bargain, sell and convey, and forever quitclaim unto the said David Webster, his heirs and assigns, all the right title and interest in and to the land and buildings in said Saco, described in a deed of mortgage, made by John Spring and Olive, his wife, to said corporation, dated January 4th, 1830, and recorded in the registry for York County, book 135, p. 28, reference being had to the said deed for a more particular description, entry having been made to foreclose, and the right of redemption having expired, and said Webster having, at said Spring's request, paid the amount which would be due on said mortgage.  This release is made to the said Webster at the request of the said Spring and wife, and is intended to discharge all title acquired by said corporation, the mortgage having been assigned to us in trust."  There was much other evidence adduced at the trial, tending to prove, on the one hand, that the mortgage

had been foreclosed, and, on the other, that it had not, which we deem it unnecessary to take into consideration.

We think it clearly deducible from the testimony, that the deed, from said trustees to Webster, was made at the request of the defendant; and that it passed through his hands to Webster at the time he took from Webster the writing conditioned to reconvey, &c. Under such circumstances we think he must be estopped to aver against the plaintiff, however the understanding may have been between him and Webster, that the deed, so made and delivered by him to Webster, was inoperative, particularly, as the plaintiff does not appear to have any other knowledge of the transactions, between Spring and Webster, than such as he was enabled to obtain from the registry of deeds. We are not to presume that the defendant intended a fraud upon Webster and his assigns; and therefore must consider the plaintiff as having a perfect right to hold the estate against the defendant for the term of his life at least.

It is a principle in equity, if a man will stand by and see another make expensive erections on land claimed by him, and give no notice of his claim, he shall be enjoined from afterwards making claim to the same, to the injury of him who may have made such erections; and so if a man will stand by and see another purchase real estate, believing that he is acquiring a good title thereto, and gives no intimation that the land is his, he shall not afterwards be allowed to make claim thereto. *Wendell* v. *Van Rensselaer*, 1 Johns. Ch. Ca. 344, and cases there cited; *Storrs & al.* v. *Barker*, 6 Johns. Ch. Ca. 166. And a similar principle has been recognised at common law, *Hatch* v. *Kimball*, 16 Maine R. 146. In this case the defendant, not merely stood by, but he procured the conveyance to be made, and was the go-between of the parties in accomplishing it. It would be a reproach to the law, if, in such case, he could be allowed to question the rights of third persons from thence, innocently, deriving title. There are numerous cases in which, if a party has so conducted, as wittingly and willingly to lead another into the belief of a fact, whereby he would be injured, if the fact were not

as so apprehended, the person inducing the belief will be estopped from denying it to the injury of such person.

The verdict, in this case, was taken subject to the opinion of the Court upon the correctness of the ruling, and instructions of the Judge, who presided at the trial. The Judge instructed the jury that they must be satisfied, that Mrs. Spring was apprised of, and assented to the arrangements or acts of the defendant, in order to render the conveyance to Webster effectual to pass the estate. This instruction, we cannot regard, as having been properly given. Her knowledge or verbal assent, could have had no effect upon the operation of the deed. Although the estate was held in her right, she could not have been bound by her verbal assent, or actual knowledge of the conveyance. This instruction, if regarded by the jury, and we cannot doubt that it was, must have tended to mislead them; for it is very clear, that there was no evidence in the cause tending directly to prove that she knew any thing about it.

A new trial therefore ought to be granted as well on account of the misdirection of the Judge, as because the verdict is clearly against the weight of evidence and the manifest justice of the case.