Copeland *v.* Copeland.

CALVIN COPELAND *versus* ROYAL COPELAND.

If a purchaser had notice of an existing unrecorded mortgage, as between him and the mortgagee, it must be considered the same as if the mortgage had been recorded.

At law, as well as in equity, where one by his words or conduct wilfully causes another to believe the existence of a certain state of things, and induces him to act on that belief, so as to alter his own previous position, the former is concluded from averring, against the latter, a different state of things, as existing at the same time.

But several things are essential to be made out in order to the operation of the rule : — the first is, that the act or declaration of the person must be wilful, that is, with knowledge of the facts upon which any right he may have must depend, or with an intention to deceive the other party ; he must at least, it would seem, be aware that he is giving countenance to the alteration of the conduct of the other, whereby he will be injured, if the representation is untrue ; and the other must appear to have changed his position by reason of such inducement.

Where the instructions to the jury are too general, but the party is not aggrieved thereby, this furnishes no sufficient cause for exceptions.

If the instructions of the presiding Judge are such as to withdraw from the decision of the jury a question exclusively for their decision, and not for that of the Court, still, it would seem, that if in the opinion of the Court, there was no evidence in the case from which the jury would have been authorized to decide the question in favor of the party complaining of the instruction, that such erroneous instruction will furnish no sufficient cause for granting a new trial.

ON the following exceptions to the ruling of TENNEY J : —

" This was an action of ejectment for an undivided half of a farm in Dexter.

" The plaintiff introduced a warranty deed of the premises, Royal Copeland to Joseph T. Copeland, dated May 10, 1836, acknowledged July 5, 1836, recorded April 7, 1837 ; mortgage deed, Joseph T. Copeland to Calvin Copeland, dated July 5, 1836, acknowledged July 6, 1836, recorded July 11,

1836 ; warranty deed, Joseph T. Copeland to C. Copeland, dated Sept. 11, 1840, acknowledged Sept. 11, 1840, recorded Sept. 16, 1840.

" The tenant then introduced a mortgage deed of the premises, Joseph T. Copeland to Royal Copeland, dated June 10, 1836, acknowledged June 1836, and recorded April 6, 1841 ; likewise a note of $600, and two notes of two hundred each, secured by said mortgage, said notes having been signed by said Joseph T. Copeland.

" The tenant then called Joseph T. Copeland, who was objected to as interested, but the objection was overruled, and he was permitted to testify, and did testify, that when he gave the mortgage deed to the demandant, he informed him of the prior mortgage given to the tenant, his father, and that prior to the giving said mortgage he had informed him of said previous mortgage.

" On cross-examination he testified, that there was a mortgage on these premises to the town of Dexter, to secure $500, of which he had made no mention to the demandant. The plaintiff held notes against him to the amount of about $900, all of which were given up when the $1000 note mentioned in the plaintiff's mortgage was given. All his personal property was in the hands of the demandant ; that he had a horse and chaise which were in his hands to secure him ; and that he thought his father's name was on none of the notes given up when the mortgage to the demandant was executed. That when he purchased the premises he gave therefor, the Pressey place, and a note for $600, and that that note, and the other two, which were for debts justly due his father, were included in the mortgage given to his father. That to make up the $1000 note to the plaintiff he received of him personal property to make up, with what he owed him before, that sum ; that he helped build his father a house near the Pressey mill, in doing which he received aid from the demandant. That the demandant let him have personal property, (horse and wagon) with which he paid the joiner, that he sold a part of the personal property on which the demandant had a claim to the

amount of 2 or 300 dollars, to one Safford, that all his personal property was mortgaged to the demandant, and that when he gave the mortgage of the real estate to the demandant, there was no other name than his own on any notes given up. All his personal property was discharged from mortgage, if there was a mortgage, but not certain whether there was any.

"The witness further testified that Sept. 11, 1840, he settled with plaintiff and gave the warranty deed of that date ; that he was owing the demandant 400 or 500 dollars beside the mortgage note ; that at the time of the settlement the plaintiff allowed him $900 for the premises in dispute, and that he gave his note for $600, being the balance due him after being credited as above stated for the farm ; that at this settlement nothing was said about the mortgage to the tenant as he recollected. Said Copeland further testified, that the place in 1836 was worth $2200 or $2500, that there was no agreement that what he did in building the house should go in payment of the farm, and that he owed his father a considerable sum, on account, and that there had been no settlement between them; that his father had paid out for him, for which he has received nothing, $460.

"Samuel Copeland, testified that in June, 1836, the plaintiff met the defendant — that they had a conversation about the trade between Joseph T. Copeland and the defendant — that the defendant told the plaintiff that Joseph had given the Pressey mill and his note for the farm, and that a mortgage was given — that the plaintiff inquired if the mortgage was on record, and was informed it was not.

"Comfort Spooner testified that he was present at a conversation in the spring of 1840, between the demandant and one McCrillis, in which, as he said, the demandant stated to him that Joseph T. Copeland told him when he gave him the mortgage, that he had given his father one, but that there was but little due on it, and he was going to take it up in a few days.

"Hiram Spooner was present at the same conversation, and testified substantially to the same facts.

" The demandant then called Hiram Safford, who testified he resided on the premises in dispute, 3 years, from April 1837, to 1840, that he had originally a lease from Joseph T. Copeland and Royal Copeland, that Joseph T. Copeland's interest was assigned to the plaintiff, that the whole farm in 1836, was worth from $1000 to $1500 and was now worth less, that the first year he paid rent to Royal, some to Calvin, paid no more than one-half to defendant; paid other one-half mostly to demandant, paid to Joseph T. a part the first year, all after first year paid to demandant ; that the tenant said when he sold the farm to Joseph, he was to have one-half the Pressey mill, and Joseph was to build a house. Joseph caused the house to be built. Joseph T. told me that was the bargain. He further testified that there were no objections by defendant, to plaintiff's receiving half of the rent, that the tenant hired the farm one year (1840) of this demandant, and paid him rent for the same ; that in December, 1839, the plaintiff and defendant talked of dividing the place, went on the farm and made a parol division of the same ; this last was in Dec. 1840 ; witness went with them.

" Defendant said after the division agreed to meet at the defendant's for the purpose of bidding for choice; that the defendant told him a day or two afterwards, that Calvin bid $90, and he bid $95 for choice, and that he took the north half, and that they could not exchange deeds till Calvin should get a deed from Joseph T. Copeland.

" The witness further testified, that he talked of purchasing of Calvin, his half the farm. The defendant knew of it, and told him he thought it would be a good plan, and talked of buying defendant's half. Next year after witness carried on the whole place ; defendant was to have one-fourth of the proceeds.

" In spring of 1841, first heard of mortgagee's claim.

" Witness further testified that Joseph T. Copeland told him that he had bought the premises in dispute, of his father, and was to pay him by the Pressey place, which was deeded to him, and by building the house near the mill, and that he, Joseph, did work on the house.

Copeland v. Copeland.

" Witness further testified that in 1836, he purchased a horse and chaise of said Joseph, which he learned was under mortgage to plaintiff, that he so informed Joseph T. Copeland, who denied it, that he went to see the plaintiff and there saw a mortgage signed by Joseph T. Copeland, and two if not three notes signed by him, and his father ; he did not read them, but the filling was over 200 dollars ; told Joseph of this, and he said he would make arrangement.

" Luther Copeland, called by the demandant, testified that he was the brother of the parties, that he lived within 130 rods from the tenant, that the tenant told him before 1841, he had sold half of his farm to Joseph T. Copeland, and purchased half the saw mill in payment of the farm, he did not say how the rest was to be paid — he said Joseph was to build him a house, and let him have one half the saw mill towards the place ; that he was present when both parties talked about a division 2 years ago last fall ; that they asked his opinion about dividing ; that both told him they had divided the land verbally, that the tenant told him that they bid for choice, the demandant bid $90, he bid $95, and there it remained, that the defendant said they could go no further, till some writings were fixed between Joseph and plaintiff ; value of whole farm in 1836, was $1600. That defendant carried on the farm 3 years ago ; that Royal Copeland always spoke of his brother as owning half and that he never heard of the mortgage claim till 1841. Joseph told me the expenses of the house and the mill, would pay or overrun the farm ; the house not completed ; said his bills which he had expended and the mill would pay for one-half the old farm, which he bought of his father. Defendant helped build the house at the mill, he worked there himself ; did not know who paid the hands ; defendant was there most of the time, and took charge of it ; Joseph was there occasionally off and on ; place was bonded in 1836, for $2400 ; house underpinned with cedar ; witness sold cedar to defendant. Witness worked one half day planting ; Joseph paid him for 2 or 3 day's work.

"Upon this evidence, the counsel for the demandant requested the Court to instruct the jury, that if the demandant had notice of the prior mortgage, when he took the warranty deed of Sept. 11, 1840, still if the jury should be satisfied that the demandant was led by the acts, conduct, or declarations of the tenant, to believe that he did not claim by virtue of his mortgage, or that the same had been paid by the mortgager, and the demandant took said deed of Sept. 11, and paid or allowed said Copeland, for the land, in consequence of such belief, so induced by the tenant, that he was entitled to recover.

"This instruction the presiding Judge declined giving, but instructed the jury that there could be no waiver by the tenant of his rights by parol; that if the demandant had notice of the first mortgage, prior to the time of taking his mortgage, the mortgages to the defendant would take precedence; that any account towards building the house, by Joseph T. Copeland, not settled, or agreed to be allowed or indorsed, on the notes to the tenant, or the notes given up, would not be payment thereon; and that nothing short of actual payment of the mortgage notes, by Joseph T., or a deed of release from the defendant, could make out a good title in the demandant; and directed the jury to find if the demandant was proved to have had notice of the prior mortgage, and if so, to render a verdict for tenant, unless the notes secured by mortgage to tenant, were paid; if no such notice was proved, verdict was ordered to be for demandant.

"The jury returned a verdict for the tenant.

"To the above ruling the demandant excepts.

"John Appleton, for plaintiff.

"The foregoing exceptions having been shown to me, before the final adjournment of the Court, and found conformable to the truth, are allowed.    "John S. Tenney, Justice presiding."

At the June Term in this county, 1848, this case was said to have been argued in writing, and was continued *nisi.* The opening argument was by

*John Appleton,* for plaintiff.

The counsel for the demandant requested the Court to instruct the jury that if the demandant had notice of the prior mortgage to the tenant when he took the warranty deed of Sept. 11, 1840, still if the jury should be satisfied that the demandant was led by the acts, conduct or declarations of the tenant to believe that he did not claim by virtue of his mortgage, or that the same had been paid by the mortgager and the demandant took said deed of Sept. 11th, and paid or allowed said Copeland for the land in controversy in consequence of such belief so induced by the tenant, that he was entitled to recover.

This instruction the presiding Judge declined giving, but instructed the jury that there could be no waiver by the tenant of his rights by parol ; that if the demandant had notice of the first mortgage prior to the time of taking his mortgage, the mortgage to the defendant would take precedence ; that any account towards building the house by Joseph T. not settled or agreed to be allowed on the notes to the tenant, or the notes given up, would not be payment thereon ; and that nothing short of actual payment of the mortgage notes by Joseph T. or a deed of release from the defendant, could make out a good title in the demandant ; and directed the jury to find if the demandant was proved to have had notice of the prior mortgage, and if so, to render a verdict for the tenant, unless the notes secured by the mortgage to tenant were paid, &c.

These instructions substantially were, that a mortgage could not be discharged by any thing short of actual payment, or waived by parol, and that though the mortgagee had by acts, conduct or declarations, held out to the world that he had no claim upon the premises mortgaged, and others had acted upon a belief by him induced that such was the fact, that still he might retain his rights as a mortgagee.

I think the Court on the instructions given and withheld erred.

1. A mortgage may be waived or discharged by parol, and without actual payment.

In *Martin* v. *Mowlin*, 2 Burr. 969, Lord Mansfield says,

Copeland *v.* Copeland.

" that the mortgage is a charge upon the land ; and whatever will give the money will carry the estate on the land to every purpose. The assignment of the debt or forgiving it, will draw the land after it as a consequence. Nay it would do it though the debts were forgiven only by parol, for the right to the land would follow notwithstanding the statute of frauds."

In *Wents & ux.* v. *Dehaven*, 1 S. & R. 312, Yeates J. says, " the forgiving the debt will draw the land after as a consequence. It will do it though the debt be only forgiven by parol." See Pow. on Mortgages, 144 ; *Richards* v. *Sims*, Barn. 90.

2. The defendant admitted the validity of our mortgage, offered to divide, and the division was delayed at his suggestion till the plaintiff could procure a discharge of the equity ; the defendant not setting up nor claiming any interest adverse to the demandant.

Now the tenant, by his acts and conduct is estopped *in pais*, to setting up his mortgage as against the demandant, having held out to him that it was paid or that he did not claim under it. *Dezel* v. *Odell*, 3 Hill, 220.

A party will be concluded from denying his own acts or admissions, which were designed to influence the conduct of another and did so influence it, and when such denial will operate to the injury of the latter. *Welland Canal Co.* v. *Hathaway*, 8 Wend. 483 ; *Presb. Cong. of Salem* v. *Williams*, 9 Wend. 147 ; *Pickard* v. *Sears*, 6 Ad. & Ellis, 469 ; *Gregg* v. *Wells*, 10 Ad. & Ell. 90.

So too, concealing his claim and recognizing ours, and advising others that they had better purchase he is not now to assert any claim. *Lee* v. *Hume*, 7 Cranch, 366 ; *Brinkerhoff* v. *Lansing*, 4 Johns. Ch. 65.

*Knowles*, for defendant.

The plaintiff claimed the demanded premises by virtue of a mortgage deed from Joseph T. Copeland to him, dated July 5th, 1836, and recorded the 11th of the same month, and also by a warranty deed from said Joseph T. to him, dated Sept. 11th, 1840, and recorded Sept. 16th.

The defendant claimed to hold the premises by virtue of a mortgage deed from the same grantor, Joseph T. Copeland, to him, dated June 10th, 1836, being prior to the plaintiff's deed, but not recorded until subsequently to the recording of the demandant's, to wit: on the 6th of April, 1837.

Joseph T. Copeland, the grantor of both parties, derived his title from Royal Copeland by deed dated May 10th, 1836, and gave back to him the mortgage of June 10th to secure the payment of the purchase money, being one note of $600, and two other notes of $200 each.

The recording of the defendant's deed, being subsequent to that of the plaintiff's, gave rise to the question of notice to the demandant of the deed to Royal Copeland and which was fully proved and settled by the verdict of the jury.

The question of the payment or discharge of defendant's mortgage was also inquired into, and the fact, that it had never been paid or satisfied in any way, not only found by the verdict of the jury, but expressly admitted on the trial by the plaintiff's counsel.

There was no suggestion of any unfairness in any of these transactions or of fraud or collusion between the parties, but it appears by the evidence reported that at one time, there were conversations about a division of the place and some steps taken to effect it, and it was this testimony which gave rise to the question presented to the Court in this case, to wit: whether the defendant by what then took place waived or relinquished his claim to the property secured by his mortgage.

It will be seen by recurring to the testimony reported upon this point, that the evidence upon the trial falls very far short of the facts assumed in the instructions requested of the Court. Nor is there any thing in that testimony inconsistent with the validity of the defendant's mortgage at that time, or his subsequent assertion of his rights under it. No language is imputed to him indicating any intention of relinquishing or waiving any right or claim. He did not intimate that it was paid or in any way satisfied, or that he did not intend to claim by it, or that he would relinquish his rights to the de-

mandant or hold them subordinate to his. It appears that at the time the demandant took his deed, he was informed by Joseph T. Copeland that he expected to be able to settle up the prior mortgage to the defendant, and the plaintiff was content to take it and run his risk, either that this would be done or that he could hold by getting his deed recorded first, (he knew defendant's deed was not recorded,) or that he might obtain a division of the place and make his title good. The movements for a division originated with the plaintiff, no doubt with this view, and though the defendant talked with him about it, it appears that he finally declined altogether to complete any division, for what particular reason does not very clearly appear, most probably because his mortgage had not been satisfied, which is about as good a reason as could well be imagined. It may be too, that the defendant, ignorant and unacquainted with business, fell into the very common error of supposing that he had lost his rights by the prior recording of the plaintiff's mortgage, until he was better advised. (*The plaintiff no doubt had such in impression.*) Suppositions that fully explain all that was done or said about a division, and with a much greater degree of probability than the pretence that he ever intended to relinquish rights so important to him without motive or consideration.

Upon this evidence of the acts and declarations of the defendant, the plaintiff's counsel contend that the defendant is estopped "*in pais*" to setting up his mortgage as against the demandant, having, as it is said, held out to him that it was paid and that he did not claim under it, and that the demandant had acted upon that representation, to his prejudice.

This is assuming what the case does not show and what is not true in point of fact. The defendant never held out to the demandant, that his mortgage was paid or satisfied, or that he did not claim under it. Nor did the plaintiff ever act upon any such representation ; nor could he ever have been prejudiced by any representations or acts of the defendant, as the case clearly indicates. He was fully apprised of the existence of the defendant's mortgage, when he took his from Joseph T.

Copeland. Every thing done or said by the defendant respecting the mortgage or division of the place, was subsequent to that time, and could not therefore have influenced him in taking his mortgage. When he took his deed of Sept. 11, 1840, the relations of the parties were in no respect changed, his mortgage was not thereby discharged, nor were any new liabilities assumed, or created against the demandant. The plaintiff, too, has his remedy against Joseph T., on his covenants of warranty.

There is nothing in the case upon which to predicate an estoppel. The question of notice to the plaintiff of the defendant's mortgage, was settled by the verdict of the jury. The demandant is thus shown to have been put upon his guard, being acquainted with all facts in the case, necessary for him to know, for the preservation of his rights, as fully as they were known to the defendant. It is where important information in possession of one party, is suppressed or concealed from another, and such other party is induced to act thereby to his prejudice, that an estoppel can be set up. In a question of title to real estate, there can be no estoppel where there is a registry of the deed, or what is equivalent in law, notice to the party interested, which is the case here.

Upon this point see the case cited by plaintiff, of *Brinkerhoff* v. *Lansing*, 4 Johns. Ch. 65. See also, *Parker* v. *Barker*, 2 Metc. 423.

It is contended by the plaintiff, that a mortgage may be waived or discharged by parol, without any actual payment, and authorities are cited to show that the forgiving the debt secured by a mortgage, or assigning it, will draw the land after it as a consequence ; assigning the mortgage would convey the mortgagee's interest in the land ; the assignee would stand in the place of the mortgagee, and thus the assignment would draw the land after it ; so too, as between the mortgager and mortgagee, the forgiving the debt secured by the mortgage, would operate in the same manner as payment, thus extinguishing altogether, and discharging the incumbrance, and the land which was conveyed conditionally, would revest, the con-

dition having been performed ; and thus the forgiving the debt would draw the land after it. An examination of the authorities cited by the plaintiff, will show that this is the manner in which this principle is to be understood, and this comes within the instructions actually given by the presiding Judge in this case. He instructed the jury to find if the debt had been paid or discharged, and who by their verdict, found that it had not. The foregoing then, has no applicability to the case under consideration, which is between the demandant and tenant, and relates to their interest, under their different mortgages, and who stand in very different relations from a mortgager and mortgagee. It was in this sense, that the instruction was asked and refused by the Judge presiding. He was requested to instruct the jury, that if the tenant, who was the prior mortgagee, had done certain acts or made certain parol declarations to the demandant, who was the subsequent mortgagee, that then, &c. Thus presenting the simple question, whether any thing was said or done by the defendant to the plaintiff; the defendant's mortgage being undischarged and the debt remaining unpaid and " unforgiven," amounts in law to a discharge, or waiver of his mortgage.

Or to state it as the counsel for the plaintiff would contend, whether any " acts or parol declarations," by a prior to a subsequent mortgagee are valid and binding in law, and have the effect of discharging or postponing such prior mortgage, there being a registry or notice of the same.

This is meeting the question fully and on much broader ground than the case warrants and the defendant contends that no such consequences could follow any such acts or declarations.

Suppose the defendant in this case had made a specific parol agreement, with the plaintiff, that his mortgage should stand discharged and that be would never claim under it. It would certainly be a much stronger case than this, which the plaintiff endeavors to raise by implication. Yet such an agreement would not be binding, being clearly within the statute of frauds. It would be a contract for " an interest in or concern-

Copeland *v.* Copeland.

ing lands," and all such contracts are void by that statute. See Revised Statutes, chap. 136, section 1; *Bliss & al.* v. *Thompson,* 4 Mass. R. 488—491 ; *Sherburn* v. *Fuller,* 5 Mass. R. 133 ; *Boyd* v. *Stone,* 11 Mass. R. 342; *Kidder* v. *Hunt,* 1 Pick. 328 ; *Hunt* v. *Maynard,* 6 Pick. 489; *Adams* v. *Townsend,* 1 Metc. 483.

To make the title to real estate dependent upon the " acts, conduct" or " parol declarations" of parties would be unavoidably attended with the utmost uncertainty and inconvenience, and would open a way for all that fraud and uncertainty which the law has so wisely and carefully guarded against. No man is obliged to take any thing upon trust in relation to the title to real estate, the law has provided ample means of knowledge to every one taking a title to lands, and he can only suffer by a culpable negligence, in not availing himself of those means.

In the case under consideration the demandant has never been misled or subjected to any loss or prejudice by any acts or agreements of the tenant ; he has at most, according to his own showing, only failed to obtain an advantage to which he was not entitled, by making his second mortgage available against the rights of the defendant as secured by his prior mortgage, and it should not surely be imputed to the law as a fault, that it cannot aid him in this undertaking.

*J. Appleton,* for the demandant, replied.

The opinion of a majority of the Court, WHITMAN C. J. SHEPLEY and TENNEY Justices, SHEPLEY J. dissenting, was drawn up by

WHITMAN C. J. — The action is in a plea of land, and of course is of proceeding at law, and not in equity   The plaintiff therefore must make out a legal title to the demanded premises.   His claim is under Joseph T. Copeland, the son of the defendant ; first under a deed of mortgage bearing date July 6, 1836 ; secondly, under an absolute deed, containing a general warranty, under date of 11th of September, 1840 ; both recorded soon after their dates.   If Joseph had a clear

title to the premises at the time he executed these deeds, the plaintiff's right to recover would be unquestionable.

But it appeared in evidence, that, before Joseph made his mortgage to the plaintiff, he had made one of the same premises to the defendant, to secure the payment of a *bona fide* debt due to him ; and of which the plaintiff, when he took his mortgage was apprised though it was not then recorded. The defendant's mortgage, therefore, must be considered as taking effect, in preference to the plaintiff's claim, the same as if it had been previously recorded ; so that the defendant's title as security for the amount due to him, was paramount to that of the plaintiff.

The title standing thus at law, it would seem to be difficult for the plaintiff to entitle himself to recover, unless, as ruled by the Judge at the trial, he can show, that the debt so secured to the defendant, had been discharged by payment or release.

The case is now before us upon exceptions ; and to those our attention must be confined. The plaintiff, at the trial, supposed he might rely upon certain acts and declarations of the defendant, which he alleges were of a tendency to deceive him, and which had the effect of inducing him to believe, that the mortgage to the defendant had become a nullity ; and thereupon to enter into other negotiations with his son Joseph, whereby great injury will accrue to the plaintiff, if the defendant's mortgage is to be allowed to be set up in defence in this action.

The acts and declarations, thus relied upon, are stated to be as follows : — For several years prior to December, 1840, the plaintiff was allowed by the defendant to enjoy the rents and profits of the demanded premises, as tenant in common with the defendant, who owned the other half of the farm, without any objection on his part ; and in December of that year he agreed with the plaintiff, verbally, on a division of it, in which a line separating the one half of it from the other was determined upon ; but that it was thereupon concluded to suspend making partition deeds, in conformity to their agreement, till

a deed or some writings could be obtained by the plaintiff from Joseph ; and once, when an individual was known by the defendant to have contemplated buying the demanded premises of the plaintiff, he said to that individual, it would be a good plan ; and the defendant did not cause his mortgage to be recorded until 1841.

Upon these facts, which the evidence tended to establish, it appears that the counsel for the plaintiff, at the trial, requested the Judge to instruct the jury, that, although they might believe the plaintiff had notice of the defendant's mortgage, when he took his deed of September 11th, 1840, yet, if they should be satisfied that he was led by the acts, conduct and declarations of the defendant to believe that he did not claim by virtue of his mortgage, or that the same had been paid by the mortgager, and the plaintiff took said deed of September 11th, 1840, and paid or allowed said Joseph for the premises, in consequence of such belief, so induced by the defendant, that he was entitled to recover. This instruction the Judge declined to give; and one of the questions made is, did the Judge err in not giving it ?

We have before seen that the title, anterior to any of the acts and declarations relied upon, was conditionally in the defendant by virtue of his mortgage. Have those acts and declarations, so far as the plaintiff is concerned, deprived him of it ? It seems to be well settled at law, as well as in equity, that where " one by his words or conduct wilfully causes another to believe the existence of a certain state of things, and induces him to act on that belief, so as to alter his own previous position, the former is concluded from averring against the latter, a different state of things, as existing at the same time." *Pickard* v. *Sears & al.* 6 Adol. & El. 469; *Gregg* v. *Wells,* 10 *ib.* 90 ; *Hearn* v. *Rogers,* 9 B. & C. 577 ; *The King* v. *The inhabitants of Batterton,* 6 T. R. 554 ; *Welland C. C.* v. *Hathaway,* 8 Wend. 480 ; 9 *ib.* 147 ; *Dezell* v. *Odell,* 3 Hill, 215 ; *Reynolds* v. *Loundsburg,* 6 *ib.* 534 ; *Barnard* v. *Pope,* 14 Mass. R. 437 ; *Thomson* v. *Sanborn,* 11 N. H. Rep. 200.

In this position thus established, it must be observed, that several things are essential to be made out in order to the operation of the rule ; the first is, that the act or declaration of the person must be wilful, that is, with knowledge of the facts upon which any right he may have must depend, or with an intention to deceive the other party ; he must, at least, it would seem, be aware that he is giving countenance to the alteration of the conduct of the other, whereby he will be injured, if the representation be untrue ; and the other must appear to have changed his position by reason of such inducement.

In *Storrs* v. *Barker*, 6 Johns. C. R. 166, the rule in equity seems to have been laid down in accordance with these views. It was held in that case, that one knowing certain facts, which had the effect to create a title in himself to property, though unaware of such effect, if active in inducing another to buy the same, every one being bound to know the law, he should not be permitted, afterwards to allege his ignorance of it in attempting to recover the same from the buyer.

Upon this rule, as first stated, or as extended in *Storrs* v. *Barker*, we must suppose, the requested instructions were predicated. We must now look into the case, and see if they should have been given. In the first place, it does not appear that, in the call for instructions, any regard was to be had to whether the conduct, acts and declarations of the defendant were done or uttered with a design, or even with the knowledge, that they could or would influence · the conduct of the plaintiff; or that they were done or said with a design that they should come to his knowledge ; or with any reason on the part of the defendant, to suppose that they could or would influence the conduct of the plaintiff. The request itself, therefore, was defective.

Secondly ; the facts set forth in the bill of exceptions, are not such as would warrant a call for instructions, under the rule referred to. Such is clearly the case, with regard to the plaintiff's mortgage. None of the acts relied upon, took place till long after that was made.

Copeland *v.* Copeland.

The next question is, would the requested instruction, if it had come within the rule, have been applicable, as to the other branch of the plaintiff's title, derived under the absolute deed from Joseph, made in September, 1840.  To make it so applicable it should appear, that the facts relied upon occurred at the time, or before the making of the deed, as, otherwise, they could have formed no inducement to the plaintiff to take it. The verbal agreement to make partition would seem, from the evidence, set forth in the bill of exceptions, presented by the plaintiff, and allowed by the Court, to have been made in December after the date of that deed; and, therefore, could have formed no inducement for him to take it.  The rents and profits, which the defendant allowed the plaintiff to receive, accrued before the taking of that deed.  But that was nothing more than occurs between mortgager and mortgagee, in almost every instance of a mortgage ; and the plaintiff was but in the place of the mortgager, in reference to the defendant; he having become seized merely of the right in equity of redeeming from him.

And it is of every day's occurrence for the mortgagee to forbear, for years, even, to enter on the mortgaged premises, against the mortgager or his assigns.  The existence of the defendant's mortgage, must be regarded as having been well known to the plaintiff, from the time the latter took his mortgage, in 1836.  There could, therefore, be no concealment or misrepresentation as to that fact.  The plaintiff, thereafter, should have looked for something more than equivocal acts, merely admitting a possible inference, that it had been discharged.  In doing otherwise, he must be considered as having acted without due precaution, and as liable to the imputation of gross negligence, in paying Joseph the full value of the demanded and mortgaged premises.  As to the defendant's omission to record his deed, till 1841, it must be remarked, that, it had become, as to the plaintiff, the same as if it had been seasonably recorded.  The title had vested under it in the defendant.  This the plaintiff must be deemed to have understood, whether the deed was ever recorded or not.  This, then, was not a circum-

stance which should have thrown him off his guard, when he took his absolute deed.

As to what passed between Safford and the defendant, in reference to the purchase of the part claimed by the plaintiff, it does not appear, that the plaintiff was apprised of it, before the taking of that deed. Moreover, it does not appear that the defendant was present, when the plaintiff took it. Indeed it does not appear that the defendant knew any thing of the nature of the bargain, which the plaintiff made with Joseph, in taking it.

There was then no act or declaration, done or made, in the presence of the plaintiff, by the defendant, which could fairly have been taken to be an inducement, intentionally held out to the plaintiff to make the bargain with Joseph, which resulted in taking from him his absolute deed of the premises ; and of course, nothing that could have authorized a call for instructions, of the nature of those contemplated by the counsel for the plaintiff; and they were therefore properly refused.

We now come to the consideration of the instructions, which the Judge, at the trial, did give ; and it must be admitted, that, abstractly considered, they were of an import, somewhat too general.

And it is not unusual for a Judge to express himself in general terms, having, at the moment, only the case before him presented to his mind, and having a view to that alone. The instructions were, that there could be no waiver by the tenant of his rights by parol ; that nothing but a deed of release, or evidence of actual payment of the debt to the defendant, would avail the plaintiff. We have seen that the conduct and declarations of the defendant might have been such, that it would have been otherwise ; and that, if those acts and declarations had been proved, so as to bring the case within the rule to which they would be applicable, the plaintiff might have recovered ; but as they did not, the plaintiff is not aggrieved, in this particular, by the generality of the terms of the charge, and, therefore, is not entitled to maintain exceptions on account thereof.

Furthermore, it is urged, that, by the generality of the terms of the instructions, the jury were precluded from considering whether the debt due to the defendant had been forgiven; and it is true that such was the case. But then, the question again recurs, was there any evidence in the case, which could have authorized the jury to find that the debt had been forgiven.

This was a question between Joseph and the defendant. The position, that a debt may be forgiven, even by parol, is supported by authority. *Martin* v. *Mowlin*, 2 Burr. 969; *Mentz & ux.* v. *Dehaven, Executor*, 1 Serg. & Raw. 312. And it may well be conceived, that one may give up a personal security, he may hold for a debt, to his debtor to be canceled, with a declaration of his forgiveness of the debt; and that the debt would thereupon be extinguished. In the case of *Wentz* v. *Dehaven*, the creditor had given a writing under his hand, witnessed by two witnesses, to his debtor, his son-in-law, containing a declaration, that he never intended to call for the amount due by a bond and mortgage, which he held against him; nor for the interest thereon; and that he intended to give up the same; and over twelve years thereafter had elapsed, when the creditor died without any call for, or payment of either principal or interest; and the wife of the debtor, being the daughter of the creditor, the Court thinking it might be considered as an advancement to her, held the debt to have been forgiven.

But what have we in this case, tending to show a forgiving of the debt to the debtor? It is obvious, that, to be available to the plaintiff, it should be such a forgiving of the debt, as would enable the debtor to oppose a recovery of the debt of him, or that should tend to that effect. On looking into the bill of exceptions, we do not find the slightest evidence tending to show, that the debtor could ever have had any pretence for such a defence. On the contrary, he himself was a witness, and disclosed no ground for any such defence; but testified that the debt was justly due. The plaintiff, then, cannot be aggrieved because the charge of the Judge precluded the consideration of such ground of defence by the jury; and besides,

the case does not exhibit any attempt at the trial to set up any such ground as tending to defeat the defendant's claim; and of course the attention of the Court, was not brought to the particular consideration of any such exception, to the generality of its ruling.

It is further insisted, that the jury were precluded, by the charge, from giving their attention to a question of fraud as imputable to the defendant, affecting his rights, which it is contended the case presents. The reply to this must, in a great measure, be the same as to that in relation to the supposed forgiving of the debt. No question of fraud seems ever to have been brought to the notice of the Court, otherwise than is contained in the requested instructions, in reference to which we have seen that the pretence of actual fraud, on the part of the defendant, had no foundation in any of the evidence, supposed to have a tendency to support it. In fact the case as exhibited, could scarcely have involved the consideration of any other question, than that of actual payment of the debt to the defendant; and the jury, under proper instructions upon that head, found that the debt had not been paid; and it is also distinctly admitted by the counsel for the plaintiff, in his argument in writing, that the amount due is not paid.

It may be remarked that the conduct of both parties has been singular; and seems inexplicable upon any other hypothesis than that they had both labored under the impression that the recording the plaintiff's mortgage, before that held by the defendant, had vested the title in the plaintiff, to the exclusion of all right remaining in the defendant. The defendant may well be supposed to have been under such impression, as it does not appear that he was apprised of the fact, that the plaintiff, when taking his mortgage, knew of the existence of that of the defendant. The plaintiff being unlearned in the law, may also have been under the same impression. When the defendant discovered his mistake, he of course altered his conduct. In this view there would not seem to be the slightest ground for the imputation of a fraudulent intent on either

side. The plaintiff cannot be regarded otherwise, than as having been unaccountably remiss in taking his second deed and making additional advances upon the supposed strength of the title thereby acquired, without concerning himself at all with the title of the defendant, under his mortgage, and without the slightest inquiry, so far as appears, concerning it.

*Exceptions overruled.*