# ROCKINGHAM.

## JULY TERM, A. D. 1858.

### DAVIS *v.* HANDY.

37 65·
67 548
68 130

37 65
71 122

Under the description of a "rope-walk" in a deed, such land of the grantor will pass as is exclusively devoted to the use of the rope-walk.

Where a creditor, who has opportunity to secure his debt upon personal property, is induced, by the representations and persuasions of a third person, to levy his execution on land of the debtor, if such third person, after the levy is commenced, and before it is completed, bring in a mortgage, of which the creditor was ignorant, and allow the levy to be completed without notice of his claim under the mortgage, he is estopped to set it up against the levy, though he may have been ignorant, when he bought it, that the description in the mortgage would by legal construction cover the land.

WRIT OF ENTRY, for one undivided sixth part of a dwelling-house in Portsmouth, and also for a piece of land in Portsmouth, bounded south-easterly on South street, forty-four feet; south-westerly by a lane leading from South street to a rope-walk, one hundred feet, more or less; north-westerly by the same rope-walk, forty-four feet; north-easterly by land of William Vaughan, deceased, one hundred and thirty feet, more or less, to South street, known as the "Salter lot." Plea, the general issue.

Jeremiah Johnson once owned the demanded premises. On the 10th of May, 1851, the plaintiff attached the demanded premises, in mesne process against Johnson, and having recovered judgment in that suit, in October, 1851, both parcels were duly set off to him on his execution, at

the appraised value of $469, the levy having been commenced within thirty days after the recovery of judgment, and completed on the 3d of February, 1852.

The defendant introduced a mortgage deed from Johnson to William B. Vincent, dated October 1, 1850, conveying "a certain piece or parcel of land, with the rope-walk, engine and machinery appertaining thereto, and situate in said Portsmouth, and bounded and described as follows : On the north by the "South mill-pond," on the south by land of William Russell and A. A. Peterson, on the west by land of Elizabeth L. Elwyn, and being the rope-walk now occupied by me." On the 14th of January, 1852, this mortgage was assigned to the defendant and G. M. Mathes, and the defendant has since acquired the title of Mathes. Vincent took possession under his mortgage, January 14, 1851, and completed a formal foreclosure.

The defendant also introduced a deed from William Bartlett to Johnson, dated April 23, 1833, conveying "a certain piece or parcel of land, situate in Portsmouth, aforesaid, on the south side of the Mill-pond, with the rope-walk thereon, being the same lot of land that was set off to me on execution against William Pickering." Neither of the lots claimed by the plaintiff was covered by the description in this deed. It appeared on trial that from the land conveyed by Bartlett's deed to South street was exactly one hundred and thirty feet, or nearly so.

The defendant then introduced an unrecorded deed from Maria Salter & a. to Johnson, dated October 1, 1844, conveying a certain piece or lot of land, lying and being in said town of Portsmouth, and bounded south-easterly on South road, forty-four feet; south-westerly by a lane leading from said South road to the rope-walk, one hundred and thirty-three feet, to land on which the rope-walk stands; north-westerly by said last mentioned land, forty-four feet; north-westerly by land occupied by widow

Mary Vaughan, one hundred and thirty-three feet, more or less, to said South street, to the bounds first mentioned." It was agreed that South road and South street are the same street.

When Johnson bought of Bartlett, the "Salter lot" was all open and uninclosed to the rope-walk. Salter inclosed the whole of his lot in a fence before 1844, and it was so inclosed when he sold to Johnson.

It appeared from the testimony of Johnson, that he bought the Salter lot to enlarge the works of his rope-walk; that in 1848 he put on a building for a steam engine, to carry his works, which building extended about nineteen feet on the Salter lot, and dug a well on the Salter lot, about fifteen feet from the building, to supply his engine with water; that he carried the fence about forty-five feet from the northerly line of the Salter lot, and the remainder of the lot south of this fence had remained inclosed since he removed the fence, in 1848; that he originally intended to use the whole of the Salter lot, as appurtenant to the rope-walk, changed his original purpose, in 1848, but did not wholly abandon it till 1850; that the part of the Salter lot inclosed in 1848 was set out to fruit trees for an orchard.

At the date of Vincent's mortgage the uninclosed part of the Salter lot, where the well and part of the engine house is, was in common and open to the lane, and used by Johnson and Johnson & Handy, who were partners, to store barrels and timber on, and continued to be so used by Johnson and Handy to the date of the plaintiff's writ on this suit.

William H. Rollins testified for the plaintiff, that he had been agent for the plaintiff since this levy and set-off, down to the commencement of this suit; that he took possession of all the property set off; that he had leased the land inclosed within the fence in successive years; that he first knew of Handy's claim in 1855, when he and

Johnson put tar barrels on the lot; that within thirty days after he recovered judgment for the plaintiff, and before the levy was made, Johnson had unincumbered personal property, on which he was about to levy the execution; that he met the defendant and told him his purpose; that the defendant thereupon requested and directed him to levy on these lots, and agreed that he would redeem by paying the debt, before the year expired, if he would do so; that he accordingly, in consequence of this agreement and request of the defendant, levied on these lots, and that he called on the defendant before the end of the year to redeem the land by paying the debt, and the defendant said the land was well sold, and he should not redeem; that the defendant never claimed any of the land set off in conversation with him; that the defendant asked him to levy on this real estate on which the execution was levied.

The plaintiff also introduced the testimony of W. F. Wendell, that he was the officer who made the levy, and that Johnson gave him a paper before the levy, which he produced, containing a description of the premises levied on, and represented that all included in that paper was not under any incumbrance; that the paper set forth the whole of the Salter lot, as described in the plaintiff's set-off and suit; that Johnson was present during the whole time of making the levy, and requested him to levy on that, as it was free and clear, and said that this was the same land conveyed to him by the Salter deed, and a description of the same land. He also testified that the defendant asked him if he had attached this Salter lot, and said he had told Rollins to levy on this lot, and he expected to redeem it before the year expired: That some of this talk was with Handy about the time the original writ was in his hands, and some of it after the levy: That after the levy, the defendant asked him, upon his having advertised the property for sale, what he asked for it, and he told him, the amount it was set off for.

Davis *v.* Handy.

That he never knew Handy to claim the lot till June or July, 1855 ; that he then asked the defendant why he did not redeem, and the defendant asked if the thirds of Johnson's wife were included in the set-off; that he told him no, and the defendant said the property was well sold : That afterwards the defendant said " the property is mine," but did not say under what title he claimed it. About that time the fence was torn down and tar barrels put on the inclosed portion of the lot.

The defendant also claimed under deed of the land from the collector of taxes for the years 1854, 1855, 1856. To this title the plaintiff objected, that the land was taxed to Johnson, who did not consent to be taxed for it, and was neither owner nor occupant, and that the collector set up for sale the whole lot at auction, and sold so much as might be necessary to pay the taxes.

The court directed a verdict for the demanded premises ; on which judgment is to be rendered, or the verdict set aside and a new trial granted, or judgment rendered according to the opinion of the Supreme Court.

*S. H. Goodall,* for the plaintiff.

*W. H. Y. Hackett,* for the defendant.

PERLEY, C. J. The title derived under sales for taxes cannot be maintained, because the whole land was set up for the taxes at the auction sales. *Ainsworth* v. *Dean,* 21 N. H. (1 Foster) 400. And as the defendant sets up no other defence against the plaintiff's levy for the undivided sixth part of the dwelling-house demanded, the plaintiff is entitled to recover that part of the demanded premises.

Both parties claim to hold the " Salter lot" under Johnson's title; the plaintiff, by the extent of his execution, and the defendant under Johnson's mortgage to Vincent. Is the " Salter lot," or any part of it, covered by the description in Vincent's mortgage ?

Johnson, in 1833, bought of William Bartlett the rope-walk and the land on which it stood, bounded on the south by land of Russell and Peterson, and the " Salter-lot;" the southerly line being a continuous straight line on land of Russell, Peterson and Salter. In 1844 Johnson bought the " Salter lot," which appears to have been a rectangular piece of land, or nearly so, the north-east corner of it being the same with the south-east corner of the rope-walk which Johnson had purchased before. The Salter lot measured about forty-four feet on the old rope-walk, and about one hundred and thirty-three feet on a lane to the west of it ; was bounded on the south by South street or the South road, and on the east by the Vaughan land. At the time when Johnson bought the Salter lot it was all fenced in. In 1848 he moved the fence between that lot and the old rope-walk land, about forty-five feet to the south, and the remainder of the Salter lot from that time to 1855 continued to be fenced in from the lane, and the land occupied with and for the rope-walk, and was set out to fruit trees for an orchard, there being no entrance to that part of the lot, except by a gate about four feet wide.

The piece taken off from the Salter lot by removing the fence forty-five feet to the south, has ever since continued to be without any fence on the lane or on the old line of the rope-walk. About 1848 Johnson built an engine house on and across the line of the old rope-walk, and extending nineteen feet over it upon the Salter lot, and dug a well still farther to the south, on that lot. The engine was used for the rope-walk and the well for the engine. After the fence was moved, Johnson and Handy, who were partners in the rope-walk, occasionally put empty tar-barrels and other materials on the inclosed part of the Salter lot. The rope-walk and the Salter lot were in this condition when Johnson made the mortgage to Vincent.

The boundaries named in the mortgage to Vincent evi-

dently do not include the Salter lot. That deed describes the land conveyed as bounded " on the north by the South mill-pond, on the south by land of William Russell and A. A. Peterson, on the west by the land of Elizabeth Langdon Elwyn;" and these are all the boundaries given. The Salter lot is not bounded on the south by land of Russell and Peterson, but by the South road, nor on the west by land of Mrs. Elwyn, but by the lane, which separates it from land not belonging to Mrs. Elwyn. The boundaries do not go round and include any tract of land; but, so far as they go, they apply correctly to the old rope-walk land, bought by Johnson of Bartlett; leaving the westerly side, and that part which bounded southerly on the Salter lot, without giving any boundary. These boundaries do not inclose and sufficiently describe any tract of land, and plainly do not include the Salter lot. ·

But beside the boundaries given, the mortgage to Vincent describes the premises as " a certain piece or parcel of land, with the rope-walk, engine and machinery appertaining thereto ;" and as " being the rope-walk now occupied by me ;" and the term " *rope-walk*," we think would include, as a legal description in the deed, the land on which the rope-walk stood, and also such land in addition as was used habitually and necessarily in the business of the rope-walk; such land as was actually and exclusively devoted to the use of the rope-walk; in the same way that, under the description of a house or a mill, used in a deed, the yard and curtilage of the house and the mill-yard will pass. The part of the Salter lot which was fenced off from the remainder of the lot, and had the well on it, and part of the engine house, must, on the principle above stated, be regarded as part and parcel of the rope-walk. It was marked by a distinct boundary, and exclusively devoted to the use of the rope-walk, and passed under that description in the deed of Johnson to Vincent.

The remainder of the Salter lot, fenced off from the

rope-walk, and set out to trees for an orchard, cannot be regarded as part of the rope-walk, and did not pass under the mortgage to Vincent. It was not devoted to the use of the rope-walk, but to a different purpose. Occasional and accidental uses of it, such as are testified to by Johnson, would not annex it to the rope-walk; and the plaintiff is entitled to recover that part of the demanded premises.

The plaintiff takes the ground that the defendant is estopped, by his conduct and declarations before and during the levy of the plaintiff's execution, to set up his title under the mortgage of Vincent against the levy.

From evidence reported in the case, which is uncontradicted and above suspicion, the following facts appear: The plaintiff having recovered judgment against Johnson, had the means of securing his debt upon personal property, and was about to do so, when Johnson requested the officer, instead of taking his personal property, to levy the execution on his Salter lot, representing that it was entirely free from incumbrance, and giving the officer a description of the land, which was followed in the levy and in the plaintiff's declaration, and which Johnson represented to the officer was the same land that was conveyed to him by the Salter deed: That the defendant, when the attorney and agent of the plaintiff was proceeding to levy on the personal property of Johnson, requested the agent and attorney to levy on this real estate, and agreed that he would pay the amount of the plaintiff's debt, if the levy were made on the land instead of the goods, before the year for redemption should expire; that, in reliance on these representations of Johnson and the defendant, the plaintiff gave up his opportunity of collecting his debt by a levy on Johnson's goods, and extended his execution on the real estate demanded in this suit: That after the plaintiff's levy was commenced, and before it was completed, the plaintiff and one Mathes bought in

Davis *v.* Handy.

the Vincent mortgage, and gave no notice of his claim to the land, or of his purchase, until after the levy was completed; and the defendant sets up this mortgage against the title derived under the levy, which he advised and urged the plaintiff to make. These facts being found by the case, whether the defendant is estopped to set up his title under the mortgage, is a question of law for the court. *Hatch* v. *Kimball,* 16 Maine 146.

The defendant is not bound by the representations of Johnson, and they are not material, except in so far as they show that the plaintiff must have supposed, when he levied on the land, that it was free from incumbrance. The request of the defendant himself, that the plaintiff would relinquish his intention of levying on the unincumbered personal property of Johnson, and extend his execution on this real estate, and his assurance that the debt would be paid within the year, must be taken as the strongest representation by the defendant, that the land was free from any incumbrance by mortgage. The defendant must have known that the plaintiff gave up his security on the personal property and levied on the land, trusting to these assurances that the security on the land was equally good with that which he lost by taking that course.

The case has all the ingredients of an estoppel *in pais.* The plaintiff has lost his security by acting on the representations of the defendant, if the defendant can now set up title under the mortgage to Vincent; and that title is inconsistent with the representations made by the party who undertakes to set it up. Before the levy was completed he became a purchaser of that title. If we are to suppose that he was ignorant of the claim under the mortgage at the time when he made the representations to the plaintiff, his course, as an honest man, would be to give the earliest information to the plaintiff, who was proceeding on his urgent advice to involve himself in the

levy on the land, and not to buy in this outstanding title, and use it to defend the levy which he had procured the plaintiff to make. It is unconscientious in him to set up this title against the plaintiff, and the law will not allow him to take this unconscientious course.

The case would have been different if the defendant had merely stood by and seen the plaintiff give up his prior security and levy on the land without informing him of an outstanding title. Here the defendant actively promoted the levy, and procured it to be made. If he was himself ignorant of the mortgage when he made the representations to the plaintiff, upon making the discovery it was most clearly his duty, instead of buying in this title, to give the plaintiff notice of it before the levy, which had been commenced on the faith of his assurances, was completed. His conduct in allowing the plaintiff to go on and permit the levy, without notice, after he knew of the mortgage, and after he had bought it in with Mathes, if he intended to set it up against the levy, was grossly dishonest, and it would be a reproach to the administration of the law if such a fraud should succeed in a court of justice.

It will not avail the defendant to say, that at the time when he and Mathes purchased the Vincent mortgage, he was ignorant that the description in the mortgage deed would, in legal construction, cover that part of the Salter lot which was used with the rope-walk; for in this case the defendant actively encouraged the levy to be made, under which the plaintiff claims, and in such case the party will be precluded from claiming the land, though he was not aware of his legal interest. *Storrs* v. *Barker*, 6 Johns. Ch. 166; *Wells* v. *Pierce*, 27 N. H. (7 Foster) 503; *Rangely* v. *Spring*, 21 Maine 130; *Bitting's Appeal*, 17 Penn. 211.

The principles which we apply to this case are established by numerous authorities.

Where one has so conducted himself as willingly and wittingly to lead another into the belief of a fact, whereby he would be injured, if the fact were not so, as apprehended, the person inducing the belief will be estopped from denying it to the injury of such other person. *Rangely* v. *Spring, qua supra.*

Where one, by his words or conduct, willfully causes another to believe the existence of a certain state of facts, and induces him to act on that belief, so as to alter his own previous position, the former is concluded from averring against the latter a different state of things as existing at the same time. *Pickard* v. *Sears,* 6 A. & E. 469; *Copeland* v. *Copeland,* 28 Maine 525; *Dyer* v. *Cady,* 20 Conn. 563; *Cowles* v. *Bacon,* 21 Conn. 451; *Matthews* v. *Light,* 32 Maine 127; *Grace* v. *Mercer,* 10 B. Monroe 157.

Where a person, by his acts or declarations, designedly induces another to alter, injuriously to himself, his previous position, such acts or declarations constitute an estoppel *in pais* against the former, which, as between him and the latter, will operate as effectually as a technical estoppel by deed or record. *Kinney* v. *Farnsworth,* 17 Conn. 355; *Brown* v. *Wheeler,* 17 Conn. 345; *Buswell* v. *Davis,* 10 N. H. 413.

*Judgment on the verdict for the demanded premises.*