Hon. STEPHEN ROYCE, CHIEF JUDGE.
Hon. ISAAC F. REDFIELD, }
Hon. PIERPOINT ISHAM, } ASSISTANT JUDGES.

---

SAMUEL WOOLEY *v.* HEBER CHAMBERLAIN AND ROYAL FLINT.

[IN CHANCERY.]

*Answer in Chancery.   Estoppel in pais.   Rents and profits.*

An answer in chancery, (where the defendant has no actual knowledge of the points, and does not profess to have any, and is not either by the form of the bill, or the interrogatories, called upon to make answer to the points,) is regarded in this State, as a mere denial, or traverse of the bill, and this leaves the points, to be proved by the orator, by the ordinary manner of proof.

And where the defendant, in a bill of foreclosure, is the original mortgagor, his answer is never regarded as evidence to impeach the consideration of the mortgage securities.

And even if the answer might, under some circumstances, be regarded as evidence upon the question of the execution of the mortgage securities, including the mat-

ter of delivery; it could never be regarded as extending to a subsequent incumbrance, to one who knew nothing of the facts.

And estoppel *in pais* is an equitable abandonment of a claim, a kind of perpetual disclaimer, and a party cannot be covertly led into it; he must be made perfectly aware of the interest of the party making the inquiry, or that his declaration is going to be, or will be likely to be relied upon, by some one.

Where a note was shown in the orator's possession in October, 1848, and secured by a mortgage duly executed in 1843, and then recorded, and the note bearing that date, it was held entitled to be regarded as having existed and been delivered at that time, so as to make it incumbent upon the defendant to impeach it.

APPEAL from the court of chancery. The orator alledged in his bill, that Heber Chamberlain being indebted to one Solon Clark, in Rochester, Vermont, for eleven hundred dollars, (specifying the notes,) to secure the amount, on the 6th day of September, 1841, made mortgage of certain lands in said Rochester,—being the farm which said Clark had that day conveyed to the said Heber Chamberlain; that on the 16th day of October, 1848, said Clark assigned the mortgage to the orator, in consideration of $600 and also the notes ; that on the 23d day of September, 1843, the said Chamberlain, being indebted to the orator in the sum of five hundred dollars, conveyed the land to the orator. Long after this, Royal Flint, having recovered judgment against said Chamberlain, levied the same upon the land mortgaged. Claim for foreclosure against both. The bill was taken as confessed, as to Chamberlain.

The defendant Flint answered, admits the mortgage and the assignment of the notes then due, which the defendant claims was only $600, and consents to decree to that amount, and sets forth his judgment and levy, but denies that he claims against Clark's mortgage, and denies that Wooley had any other mortgage except the Clark, but admits that such a deed was procured to be executed by Chamberlain, but denies that the same was delivered until after Flint's attachment, and charges that it was without consideration, and fraudulent, and that if any indebtedness then existed, it has long since been paid. That Chamberlain represented that he owned the land, except the Clark mortgage, and that on the faith of the truth of such representations, he trusted him and made no examination into the records, and had not the least suspicion of the existence of any such mortgage as that last set forth.

Claims that his debt was justly due, setting forth the debts, judgments and levy, subject to the mortgage of Clark only; that Chamberlain failed about the first of January, 1848, and is still insolvent, and that he, the said Flint, has no other security.

Traverse and supplemental answers.

That he first heard of said mortgage last named, the 10th day of January, 1848, and verily believed it merely colorable, and for Chamberlain's benefit. Applied to plaintiff to know if he owned any land or claimed any interest in any lands in the town of Rochester, and was informed that he did not, and on the faith of that assertion made his levy as he did, and now claims that plaintiff shall not be allowed to make a case different from his claim at that time, upon which he has relied.

Traverse and testimony.

The testimony of Heber Chamberlain, one of the defendants, was taken by plaintiff, and proves the mortgage executed by him and delivered to the plaintiff for his benefit, that it was delivered by the witness in October or November, 1843, was then indebted about $800. That there were five promissory notes,—that he gave the $500 note at the time the plaintiff took the mortgage, and took up other notes and accounts to make it that amount; that this was in accordance with an agreement between witness and plaintiff.

Defendants' testimony. John Trask, town clerk of Rochester, and made the mortgage, at the request of Chamberlain, and recorded it; saw no note, to his recollection at the time; Chamberlain paid for making and recording deed,—did not know Wooley.

Lyman Ellsworth testified that he went to Grafton, Vt., to talk with plaintiff; represented himself as a dealer in wool, and in pursuit of wild land; understood plaintiff to say that he owned no land in Rochester and had no interest in land in that town.

Decree for the orator for the full amount of both mortgages, April term, 1851. From which decree the defendant appealed.

*A. Stoddard* for orator.

1. The mortgage deed from Chamberlain to Wooley was executed *bona fide*, and for the amount of the note set forth and described therein.

The deed was duly executed, delivered and recorded.

Wooley v. Chamberlain and Flint.

The $500 note, described in the mortgage and set forth in the bill, is proved and unpaid.

The execution, delivery and recording of said mortgage deed, was long previous to the time when the defendant Flint's lien was created, and to Chamberlain's indebtedness to him.

2. The orator is not *estopped* from claiming under said mortgage.

*Estoppels in pais* go upon the ground that it would be *fraud* for a person, by his admission, to induce another with whom he has dealing, into a course of conduct that would be injurious to him if the party making the admission be not estopped from denying it. 2 Cowen's Phil. 200, 203. Judge Cowen's definition of *estoppels in pais* in *Dazell* v. *Odell*, 3 Hill 219, cited in 2 S. L. C. 532. *Hicks et al.* v. *Crane et al.*, 17 Vt. R. 449. 2 S. L. C. 533. 5 N. H. 456, *Tufts* v. *Hays*. 11, Ib. 259 *Davis* v. *Sanders*.

The only testimony bearing upon the estoppel is that of Ellsworth, who testifies that he called at the orator's house in July, 1848 ; that he did not disclose the object of his visit, whose agent he was, or Chamberlain's indebtedness to Flint, and that nothing was said about a mortgage.

The orator's claim upon the land at the time of the chancellor's decree was $1,413 87, exclusive of costs, the value of the land as shown by the testimony of Harvey is $1100.

The orator, therefore, prays this court for such a decree as will entitle him to an execution for his costs, both in this court and before the chancellor. .

*E. Hutchinson* for defendants.

1. There was error in the decree in allowing the Wooley mortgage.

The *delivery* of a deed, or other writing, is as necessary to its validity, as its execution, and it only takes effect from its delivery, *Stiles* v. *Brown*, 16 Vt. 563.

A creditor who attaches the land of his debtor after a deed conveying such lands has been executed and recorded, but before it has been accepted by the grantee, will hold the land as against such deed. *Denton* v. *Perry*, 5 Vt. 382.

The general rule of evidence is, that it requires the testimony of two witnesses, (of *more than one* by *all* the authorities,) to over-. come the denial of the answer, in a matter responsive to the bill,

or such corroborative circumstances as shall be equivalent to such additional testimony. It is believed that no reported case can be found, where the orator has had the decree upon such an amount of testimony only in his favor, as in the present case. We refer to a few of the leading authorities. *Pierson* v. *Catlin*, 3 Vt. 272. 2 Story's Eq. Ju. Ch. 43 § 1528. *Porter* v. *Bank of Rutland*, 19 Vt. 410. *Pilling* v. *Armitage*, 12 Ves. 80. *Biddulph* v. *St. John*, 2 Sch. & Lef. 521–532. *Kemeys* v. *Proctor*, 3 Ves. & Bea. 58. *E. S. Co.* v. *Donalds*, 9 Ves. 275. Gresley Eq. Ev. 4.

The testimony of Chamberlain, (if a competent witness for the orator,) is attended with many circumstances, always held to create a suspicion of its truth. Gresley's Eq. Ev. Pt. 3 Ch. 3, p. 361–2.

The weight of presumption is against the truth of Chamberlain's story. The case discloses the means within the orator's reach, if true, to support it by other direct testimony, which he has not done. Gresley's Eq. Ev. Pt. 3, Ch. 4, last page of Ch.—title "*General Observations*."

The supplemental answer sets forth matter, which we claim as an *estoppel* upon the orator. (See L. Ellsworth's testimony.) *Broome* v. *Beers*, 6 Conn. R. 198.

2. There is error in the decree also in this—that it is for the whole amount of both mortgages and interest and accruing interest to become due; when the testimony shows the orator to be, and to have been in possession of the receipt of the rents and profits of the mortgaged premises, since April 1, 1848.

A deduction should be made, at least for that, to be ascertained by a reference.

The answer tenders to orator a decree for the amount of the Clark mortgage and the costs of an ordinary bill of foreclosure. Inasmuch as he has gone for more, (if he does not succeed upon both mortgages,) we claim costs throughout, with the above deduction.

The case was heard and reserved till the circuit term at Woodstock, in Windsor county, on the second Tuesday in September, when the opinion was delivered by

REDFIELD, J. The bill in this case seeks a foreclosure upon two mortgages. In regard to the first there is no controversy.

In regard to the second, the bill is in the ordinary form of a

bill for foreclosure. The bill charges that the mortgage was executed by the defendant Chamberlain, on the 23d of September, 1843, to the orator to secure the payment of a promissory note for $500, which he then owed the orator, and which he has never paid. The bill further alledges, that the defendant Flint recovered judgment against Chamberlain and levied upon the premises, at a subsequent date, as the property of Chamberlain, and asks for a foreclosure of the title of both defendants.

The bill is taken as confessed, against Chamberlain, and is answered by Flint. Flint admits the execution and recording of this mortgage, before his levy, but denies its delivery, until after that date. He also denies the *bona fide* character and consideration of the note secured by this mortgage. This answer is traversed and testimony taken upon both sides.

1. It is claimed by the defendant Flint, that his answer is to be regarded as evidence in the case, in regard to the time of the delivery and the consideration of the note.

But this we think is clearly not admissible, for two reasons. First. Flint has no actual knowledge in regard to either of these points, does not profess to have any, and is not supposed to have any in the bill, and is not either by the form of the bill, or the interrogations, called upon to make answer upon either of these points. Under such circumstances, it is now regarded as settled in this State, that the answer is a mere denial, a traverse of the bill, and leaves the point to be proved by the orator, by the ordinary measure of proof, the same as where the defendant formally commends the orator to such proof, as he may be able to make, acknowledging his own utter ignorance upon the point.

Secondly. Even where the defendant in a bill of foreclosure, is the original mortgagor, and has actual knowledge of the execution and delivery of the deed, bond, or note, his answer is never regarded as evidence to impeach the consideration of the mortgage securities. Possibly the answer might under some circumstances, be regarded as evidence upon the question of the execution of the mortgage securities, which would include the matter of delivery, but could never be regarded as extending to a subsequent incumbrance, who knew nothing of the facts. This point was expressly decided by this court in the case of *Loomis* v. *Fay & Patchin*, in the circuit term, in Rutland county, in June.

The deed then being produced by the plaintiff and recorded, after acknowledgment in the usual mode, must be regarded as *prima facie*, executed at the time it purports to have been. And the note being also in the custody of the plaintiff, and confessedly signed by the defendant Chamberlain, is good until impeached.

This is attempted in two modes. First. By what is claimed as an estoppel *in pais*. But we cannot think the testimony shows what amounts to an estoppel *in pais* upon the orator. To have that effect, he must have had his mind brought to the very point of the subsistence of the second mortgage upon this very lot, and either have been told that Flint wished to levy, or some other creditors, or in some way have been made aware of the importance and necessity, for the safety of others, that he should state the extent of his claim upon the land. An estoppel of this kind is an equitable abandonment of a claim ; a kind of perpetual disclaimer, and a party cannot be covertly led into it. It goes upon the ground of the obligation resting upon one owner, or part owner of the property, to disclose the true state of his title to another who is, or who is about to become interested in the same thing. And the party, to be affected by the estoppel, should be made fully aware of the interest of the party making the inquiry, or that the declaration is going to be, or will be likely to be relied upon by some one.

The proof, in the present case, is altogether bare of any such ingredient. The manner in which Lyman Ellsworth approached the orator was calculated, and was very obviously intended to put Wooley off his guard, and lead him to suppose Ellsworth had in fact, no interest in this particular land, but the contrary. The idea that one is to disclaim his rights, beyond all recovery, without being made aware what he is doing, is certainly very far from the fair import of an estoppel *in pais*. We think the old doctrine, that estoppels are odious, might very justly be applied to one of this character, which one is to be made to incur, covertly, and so to speak, by a kind of slight of hand.

Secondly. The only remaining ground upon which it is claimed that the orator should not have a foreclosure upon this second mortgage, is that the proof, fairly weighed, fails to show its continuing force and obligation. The testimony seems to show the existence of the note for $500 at the time of the hearing before

the master, and indeed as early as October, 1848, Flint's title accruing the January before. (We have no copy of this $500 note furnished to the court, but it seems to be conceded, on both sides, that the note is in the case, and our opinion is based upon that supposition. If that be not the fact, the evidence would certainly merit a somewhat different consideration.)

This note then, being shown in the orator's possession as early as October, 1848, and being secured by a mortgage, duly executed in 1843, and then recorded, and the note bearing that date, it will be fairly entitled to be regarded as having existed and been delivered at that time.

It is then incumbent upon the defendant to impeach it. This he cannot do by his answer, for he has no knowledge upon that point, and if he had, his answer at the most, is only testimony to the fact of delivery and not to impeach the consideration. *Adams* v. *Adams*, 22 Vt. R. 68 *et. seq.* And upon the point of the delivery of this note, it must be very obvious to any one, that the conviction of the mind upon this subject would stand very different if the party executing the note, declared in his answer, that it was not, in fact, delivered until after Flint's title accrued, from what it now does, upon the simple denial of Flint.

In regard to this proof, aside from the issue, for the bill and answer in this case, amount to nothing more, it will very readily occur to any one, that the hypothesis assumed by Flint, is a very possible one, and there are, no doubt, some circumstances tending to induce us to apprehend that the truth even, may lie in that direction. The declarations of Wooley, made to Ellsworth, if faithfully reported by him, certainly look as if orator probably would not have said all he did, if this $500 mortgage, and $300 more of debt, had then been owing to him from Chamberlain, and a mortgage in present existence for the $500.

But there is doubtless something to be said in regard to Ellsworth's testimony. Wooley may not have felt bound, under the circumstances of that conversation, to state all his private matters of deal with Chamberlain; some men would, and more perhaps, would not have done it. The appearance of Ellsworth, and his declarations to Wooley, seem to represent him at that time as acting the part of a dealer in wild lands and in wool, and beyond this, Wooley would not have been bound, by terms

of the utmost courtesy perhaps, to disclose his private dealings with Chamberlain.

. The testimony of Chamberlain on the other hand is full to the point of consideration and delivery, and it seems to us probable, and very considerably confirmed by the old notes and the conduct of the parties at the interview in October, 1848.   This latter matter, however, could scarcely be regarded as of much weight in a legal point of view.

The testimony of Trask does not seem to us to detract at all from that of Chamberlain.   A recollection of his *" hesitation "* at that length of time, under the circumstances, is certainly not much to be relied upon.

Notwithstanding then we might believe it possible, or even have some doubts, we could not set aside this mortgage short of some satisfactory evidence.   And it does not seem to us to exist in the case.

The rents and profits, ought to be deducted from the amount due, but we do not learn that that was insisted upon in the answer or before the master, and if it is now denied, the chancellor will no doubt order it done in the proper form, if it is deemed of any importance, and upon proper terms.   The decree of the chancellor is affirmed, and the case remanded to the court of chancery to be there carried into effect.