43  282
67  548
68   68

## DREW *v.* KIMBALL.

Where the plaintiff put into the possession of another certain cattle to sell, with an agreement that they should be held out as the property of the bailee, so that a sale might be better effected, and, in pursuance of this arrangement, the bailee represented to one of his creditors that he had bought the cattle of the plaintiff; and thereupon the creditor procured a writ, and, acting on this representation, attached them as the bailee's property;—it was *held*, that the plaintiff was estopped to set up property in himself against such creditor, although the bailee, at the attachment, informed the officer that the cattle belonged to the plaintiff.

TROVER, for converting certain cattle of the plaintiff's, attached by the defendant, as a deputy sheriff, as the property of one French, on a writ in favor of one Page.

The testimony of the plaintiff tended to show that the property, in fact, belonged to him, and that he put it into the hands of French to sell; while the defendant's evidence tended to prove a sale by

the plaintiff to French; and among other things he offered evidence of the plaintiff's statement that he had sold the cattle to French. Upon this, the plaintiff was permitted to testify against the defendant's exception, that French had advised him that it would be necessary, in order to obtain a fair price for the animals, to conceal the fact that he still owned them; and that, in accordance with this advice, he had, in conversation with the defendant's witness, disavowed ownership in the cattle. And French, also, against the defendant's exception, was permitted to state that he had so advised the plaintiff, and assign as the reason for it that the plaintiff was living at a distance, and the winter approaching, of which purchasers would take advantage. The defendant then introduced said Page, who testified that on the day the plaintiff left, but after he was gone, French told him that he had bought the stock, and that it was his property; and thereupon, on the same day, he (Page) caused it to be attached, on a demand of some years' standing; and it appeared that, at the attachment, French was present, and notified the officer that the plaintiff owned the stock.

The defendant requested the court to charge the jury that, if the plaintiff and French agreed together to represent that the property had been sold to French, and he, under that agreement, so represented to Page, who was induced thereby to cause the property to be attached, then the plaintiff was estopped to claim the property in this action. The court declined so to charge the jury, and the jury having returned a verdict for the plaintiff, the defendant excepted.

Other questions were raised, which, in the view of the court, became immaterial.

_C. H. Bell_, for the defendant.

The opinions of French as to the value of the animals was inadmissible. _Robertson_ v. _Stark_, 15 N. H. 109; _Marshall_ v. _Insurance Company_, 27 N. H. 157. The testimony of the plaintiff, that he had been advised, &c., had the effect to put the opinions of others in evidence. It would be just as proper to call witnesses on the question whether they thought buyers would take advantage of the plaintiff's living at a distance, &c.; and, in fact, French was allowed substantially so to testify.

The court should have instructed the jury as requested. If the plaintiff agreed with French that they should represent the animals as French's, then the plaintiff is bound by French's representations to that effect, as much as if he (the plaintiff) had made them himself. And if the plaintiff had represented to Page that the animals were French's, and Page was thereby induced to change his condition and attach them as French's, the plaintiff would be estopped to set up any claim for them against the attachment; and, being bound, under their agreement, by French's representations, as if they were his own, he is equally estopped by the declarations of French to Page, whereby Page was induced to change his situation, to his injury. _Corser_ v. _Paul_, 41 N. H. 31; _Odlin_ v. _Gove_, 41 N. H. 465; 1 Greenl. Ev., secs. 207, 208. The instructions which the court gave the jury go upon the ground that, if the acts were _bonâ_

*fide* between the parties, they must necessarily be so as to third parties and creditors.

*Tuck & French*, for the plaintiff.

I. As to the point that the plaintiff could not explain his statement to a third person that French owned the cattle, see *Tufts* v. *Hayes*, 5 N. H. 453. The testimony of the plaintiff was in explanation of his admissions, which had been given in evidence by the defendant. It went to the fact merely that certain advice had been given him on which he acted, and did not involve the soundness of that advice, nor the correctness of the opinions upon which that advice was based. .

II. The plaintiff is not estopped from showing that he really owned the cattle, even if he admitted or stated to a third person that he did not own them. The elements of an estoppel are wanting. (1) French got no credit from Page or any other, on account of such admission or statement. Page's debt was an old one. (2) Page was not injured or damaged in any way by hearing that French owned the cattle, when he did not own them. He may have been disappointed, but he was no worse off than before. He had not been induced " to alter, injuriously to himself, his position," by reason of French's statement. (3) The plaintiff made no statement to Page that French owned the cattle, and the case does not find that he authorized French to make any statement to any person on the subject. (4) Even French retracted the statement before the attachment was made. *Pierce* v. *Andrews*, 6 Cush. 4, is parallel. As to these principles of estoppel, the plaintiff relies upon *Davis* v. *Handy*, 37 N. H. 75; *Corser* v. *Paul*, 41 N. H. 32; *Odlin* v. *Gove*, 41 N. H. 473, 474.

BELLOWS, J. The principal question is, whether the plaintiff is estopped by his acts, and the representations to Page, to deny that the cattle belonged to French. On this point, the case finds that, at the time the cattle were attached by the defendant, upon the writ in favor of Page against French, they were in French's possession. And the plaintiff's case is, that they were his property, and merely left with French to sell. And he testified that, for the purpose of concealing the fact that he owned the cattle, that a sale of them might be better effected, he had disavowed such ownership; and that this was done in pursuance of the advice of French. And Page testified that, on the day of the attachment, after the plaintiff had left for his home, the said French told him that he had bought the cattle, and they were his property; and he thereupon caused them to be attached.

Under these circumstances, the defendant requested the court to charge the jury that, if the plaintiff and French agreed to represent the property to have been sold to French, and the latter, under that arrangement, had so represented it to Page, who was thereby induced to cause the property to be attached, the plaintiff was estopped to claim the property in this action.

Upon the evidence reported, we think the jury might have found

the facts stated in this request; and, therefore, the question is, whether there was error in declining to give such instructions. If such representation was made by French, by the direction or authority of the plaintiff, the effect would be the same, necessarily, as if made by the plaintiff himself; and so we propose to consider it.

What constitutes an equitable estoppel, is well stated by Lord Denman, in *Pickard* v. *Sears*, 6 A. & E. 460, in these words: "When one, by his words or conduct, willfully causes another to believe in the existence of a certain state of things, and induces him to act on that belief, or to alter his own previous position, the former is concluded from averring against the latter a different state of things as existing at the same time." This definition is adopted in our own State, in *Davis* v. *Handy*, 37 N. H. 75, and *Odlin* v. *Gove*, 41 N. H. 465; and in *Copeland* v. *Copeland*, 28 Me. 525, and *Brown* v. *Wheeler*, 17 Conn. 345; and in *Freeman* v. *Cooke*, 2 W. H. & G. 654, Mr. Baron Parke, who delivered the opinion of the court, holds that this definition must be considered as established in the English courts. At the same time he says, "By the term 'willfully,' however, in that rule, we must understand, if not that the party represents that to be true which he knows to be untrue, at least that he means his representation to be acted upon, and that it is acted upon accordingly. And if, whatever a man's real intention may be, he so conducts himself that a reasonable man would take the representation to be true, and believe that it was meant that he should act upon it, and did act upon it as true, the party making the representation would be equally precluded from contesting its truth." In short, the representations are to be regarded as "willful," when the person making them means them to be acted upon, or if, without regard to intention, he so conducts himself that a reasonable man would take the representation to be true, and believe it was meant he should act upon it. That was an action of trover by the assignees of William Broadbent against the sheriff, for goods seized on execution against Joseph and Benjamin Broadbent. It appeared that, when the sheriff's officer entered to take the goods, the bankrupt, supposing the writ to be against himself, informed the officer that the goods belonged to Benjamin. Afterward, on the writ being shown, he said the goods belonged to another brother, and, finally, to himself. The sheriff then seized the property and sold it as the property of Benjamin; but the jury found that the goods were, in fact, William's. The court held that the defendant was not entitled to have a verdict entered for him, because it was not found that the bankrupt intended to have the goods seized as Benjamin's; nor could it be said that any reasonable man would have seized the goods on the faith of the bankrupt's representations, taken altogether. And the court also says that, whatever intention he had in his first statement was done away with by an opposite statement, before the goods were seized. As to the principle laid down in *Pickard* v. *Sears*, see *Gregg* v. *Wells*, 10 A. & E. 54, and also 2 Smith's L. C. 460, and cases cited.

In the case before us, we are referred to *Pierce* v. *Andrews*, 6 Cush. 4, where the agent of a creditor of B called upon the plain-

tiff to inquire who owned a certain horse in the plaintiff's possession; and the latter, without knowing the purpose of the inquiry, said it belonged to B; and thereupon a sheriff seized the horse, on the creditor's execution against B, and sold it. The court decided that the plaintiff was not estopped to prove that the horse was his own, saying no one can be estopped by a deceptive answer to a question which he may rightfully deem impertinent, and propounded by a meddling intruder, especially if he give notice of the truth as soon as he perceives that his answer is acted upon as if it were true. There was evidence in this case tending to show that, by an arrangement between the plaintiff and B, the latter was authorized to call the horse his own, if he could thereby better effect a sale, and that he did so, and the plaintiff also spoke of the horse as B's. The court instructed the jury that, if B called the horse his own, and exercised acts of ownership over him, and the plaintiff also called him B's, then, if the defendant seized him without notice that the plaintiff was the owner, the plaintiff would be estopped; but not if the plaintiff, at the time of the seizure, gave notice that he was the owner, and forbade the sale. And these instructions were approved by the court above.

By the definition by Baron Parke, in *Freeman* v. *Cooke*, of the term willful, in the rule laid down in *Pickard* v. *Sears*, it is not to be understood that, to create an estoppel, the party making the representation by words or conduct meant to induce the particular person who sets up the estoppel to act upon it, or that such person should have reason to think that it was intended that he, in particular, should act upon it. But it is sufficient if such representation was intended to induce or calculated to induce all persons who might have occasion to act upon it, to believe it to be true, and act accordingly; as in the case put by Baron Parke, of a retiring partner omitting to inform his customers of the fact in the usual manner, that the continuing partners were no longer authorized to act as his agents. Here, although the omission to give notice was merely the result of negligence, and with no purpose to induce any one to act upon the belief that he was still a partner, yet, as between him and the person who was in this way induced to give credit to the firm, he is bound. This would be a case of negligent or culpable omission, within the rule of Lord Denman, in *Gregg* v. *Wells,* 10 A. & E. 54. So where a man cohabits with a woman, holding her out to the world as his wife, and a tradesman, trusting to this state of things, supplies her with goods upon the reputed husband's credit; in a suit for the price, the latter will not be permitted to disprove or deny the marriage, because every one has a right to act upon the faith that such a representation is true, whether the reputed husband meant he should do so or not. 1 Greenl. Ev., sec. 207. The same doctrine is laid down in 2 Stark. Ev. 33, and in 2 Cow. Phill. Ev., note, 192, and cases cited; *Divoll* v. *Leadbeater,* 4 Pick. 220. See, also, *Northwood* v. *Durham,* 2 N. H. 242.

Nor does the case of *Pain* v. *Andrews,* 6 Cush. 4, conflict with this view; for there the reason assigned was, that the plaintiff had

no ground to suppose that the creditor had any interest in knowing who owned the horse, and might rightfully deem the question put to him as impertinent.    There are, however, several American cases which, apparently, assume the rule to be, that to constitute an equitable estoppel, the representation or admission should be intended or designed to influence the conduct of the man with whom the party is dealing.    Such may have been the view of *Cowen*, J., in *Dalzell* v. *Odell*, 3 Hill 219 ; and in *Welland Canal Co.* v. *Hathaway*, 8 Wend. 483, the estoppel was said to exist when the acts or admissions were expressly designed to influence the conduct of another, and did so influence it.    In *Brown* v. *Wheeler*, 17 Conn. 344, the rule in *Pickard* v. *Sears*, as before cited, is recognized as the true one, although in the head note the word designedly is used, instead of willfully.    See, also, 2 Smith L. C. (5th Am. Ed.) 643, and cases cited.    In *Copeland* v. *Copeland*, 28 Me. 528, declarations made without any design or reason to suppose they would influence another, were held not to be an estoppel.

In none of these cases was the attention of the court drawn to the distinct point whether it was necessary to show that the person making the representation  designed to induce the particular person who sets it up as an estoppel, to act upon it as true, or whether it is not enough that he should hold out to all who have occasion to act, the existence of a certain state of facts which they might assume to be true, and act upon accordingly.    In the case of *Hudson* v. *Hudson*, 2 El. & Bl. 1, it was held that, there being no evidence that the defendant intended the plaintiff to act upon the faith of the representations, or that he did so act, the defendant was not estopped. And the court use language which implies a necessity to prove a willful intent to make the plaintiff act on the faith of such representations, in order to constitute an estoppel.    At the same time, the court fully recognize the definition by Baron Parke, in *Freeman* v. *Cocke*, of the term " willful," in the rule announced in *Pickard* v. *Sears*.

In other American cases, the rule is announced in terms which imply no intent to influence the acts of the particular person ; as in *Hicks* v. *Cross*, 17 Vt. 448–455, where it is said, " If one man has made a representation which he expects another may or will act upon, and the other does, in fact, act upon it, he is estopped.    So in *Wooley* v. *Chamberlain*, 24 Vt. 270–276, it is said by *Redfield*, C. J., " That the party should be made fully aware of the intent of the person making the inquiry, or that the declaration is going to be or will be likely to be relied upon by some one."    In *Rangely* v. *Spring*, 21 Me. 130, the rule is announced to be, " Where a party has so conducted himself as wittingly or willingly to lead another into the belief of a fact whereby he would be injured, if the fact were not as so apprehended, the person inducing the belief will be estopped from denying it, to the injury of such person."    So in 1 Greenl. Ev., sec. 207, it is said, " That it is of no importance whether they (the admissions) were made in express language to the person himself, or implied from the open and general conduct of the party.    For, in the latter case, the implied declaration may be considered as addressed to every one in particular who may have occasion to act

upon it." And we are disposed to regard this as a correct statement of the principle to be extracted from the adjudged cases, and as applicable to the general question before us.

In this case the cattle were put into the possession of French by the plaintiff, to be held out and treated as the property of French; not to any particular person especially, but, generally, to the public and all concerned. And it appears, from the testimony of the plaintiff and others, that they were so held out both by the plaintiff and French. Or, in other words, the plaintiff put the cattle into French's possession, with the distinct understanding that he should assume to be the owner, and so hold out to the world. This he did do; and, the fact coming to the knowledge of French's creditor, he acted upon it as if it were true, and attached the property.

It is an imperfect view of the case to regard the representation of French to the creditor as the chief element of the estoppel attempted to be set up. That is but evidence that the creditor had knowledge of the arrangement, and acted upon it. Had the knowledge come from any other source, the effect would have been the same; because the foundation of the estoppel is the clothing French with all the indications of ownership, and the acting upon that fact by the creditor. If, then, the creditor changed his position in consequence of such holding out, so that he would be injured by showing the contrary, the plaintiff must, in accordance with the principles laid down, be estopped to deny the truth of the representations.

Upon a careful consideration of the cases, we think an attachment by the creditor would be such a change of position. By it he incurs expenses, and subjects himself to a suit by the owner, and he would be injured by disproving the facts upon the faith of which he made the attachment.

In *Presbyterian Society* v. *Williams*, 9 Wend. 147, a tenant told his landlord that there was no property on the premises, and thereupon the landlord brought ejectment; and it was held that the tenant was estopped to prove that there was sufficient property. So, where a debtor declares that he has no property, and the officer thereupon takes the body, the debtor can not complain that credit was given to his statement. *Hollister* v. *Johnson*, 4 Wend. 639. So, where the defendant, in an action of trover, had told the plaintiff that he had the property in his possession, and thereby induced him to sue for it, it was held that the defendant was estopped to deny it. *Hall* v. *White*, 3 C. & P. 242. So, where the defendant, to induce a suit to be brought against him, said he was in possession, and was sued accordingly, it was decided that he was estopped to prove the contrary. *Mordecai's Heirs* v. *Oliver*, 3 Hawks 479. In *Tuffts* v. *Hayes*, 5 N. H. 452, where the defendant attempted to set up an estoppel by showing that the plaintiff had said to third persons that he owned two cows, the court held that such loose declarations to third persons were not enough; but that the declarations must have been under such circumstances as to have given to the defendant, or the one who employed him, a right to consider both as the plaintiff's property; so as to render a denial of the truth of the declarations now inconsistent with good faith and honest conduct. In this case

the plaintiff sued for his only cow which the defendant had attached. Where a person gave his name as John to the plaintiff, who sued him by that name,—held that he could not insist that it was William. 2 Stark. Ev. 33 ; *Price* v. *Harwood*, 3 Camp. 108. So the case of *Freeman* v. *Cooke*, 2 Exchequer 654, goes upon the ground that the seizure of goods on execution, would be a sufficient change of position, if induced by the party's representations.

We are, then, brought to the conclusion that in this case the jury might have found that the acts and declarations of the plaintiff and his agent, caused the creditor of French to change his position within the meaning of the rule, unless controlled by the notice given by French at the attachment, that the plaintiff owned the stock. It is quite clear that if notice, such as a reasonable man ought to rely upon, had been given to the creditor before any expense had been incurred by him, he could not be said to have acted upon the faith of the prior acts and declarations.

But it is impossible to hold as matter of law, that he did not act upon the faith of the former acts and declarations, notwithstanding the notice.

It may be said that the party was at least put upon inquiry ; but it will be remembered that the writ had been obtained, and the officer directed to attach the property, and was on the ground for that purpose ; and it does not appear that the creditor, under whose orders he was acting, was present, or at hand. Ought the officer, then, to have suspended proceedings for the purpose of inquiry, and thus taken the risk of intervening claims ? And, upon the whole, we are inclined to think that, under the circumstances, the notice avails nothing. In *Stow* v. *Meserve*, 13 N. H. 46, it was decided that notice by the debtor to an officer, who was about to levy an execution upon personal property, of an unregistered mortgage upon it, did not put the officer upon inquiry, and the reasons assigned apply forcibly to this case. Here, upon the circumstances existing prior to the notice, and upon the faith of which the creditor had a right to rely, the property was liable to attachment—the plaintiff had voluntarily so placed it, and for purposes of deception ; the creditor had, on the faith of it, been at the expense of procuring a writ, or at least the jury might have so found, and sending the sheriff to attach it, and we think the notice was too late to avail the plaintiff.

Whether any notice, at the time of the attachment, would have affected the creditor, need not now be determined ; because we think it would be unreasonable to give effect, under the circumstances, to the statements of a debtor, of a character so often made to protect a debtor's property from attachment, and which could not always, or perhaps generally, be safely regarded by the officer. So is *Ranlett* v. *Blodgett*, Grafton county.

The only remaining question, likely to arise upon another trial, relates to the competency of the explanation of the plaintiff, of his statement that French owned the cattle, and, we think, it was rightly received. *Queen's Case*, 2 B. & B. 294 ; *Odlin* v. *Gove*, 41 N. H. 465.

*Verdict set aside.*